| | |
|---|---|
| CITY AND COUNTY OF DENVER DISTRICT COURT<br>1437 Bannock Street, Room 256<br>Denver, CO 80202<br>Telephone: 303-606-2300 | DATE FILED: February 17, 2023 4:56 PM<br>FILING ID: F35D752C4532A<br>CASE NUMBER: 2023CV30555 |
| **Plaintiff(s):** TITAN SOLUTIONS, LLC, a Colorado limited liability company<br><br>v.<br><br>**Defendants(s):** B&B HEATERS, LLC, a Wyoming limited liability company, and BRIAN BLAKEMAN | <br><br>▲COURT USE ONLY▲ |
| <u>Attorneys for Plaintiff Titan Solutions, LLC:</u><br>Murray I. Weiner, Bar No. 14352<br>Dominic J. Ricotta, Bar No. 19939<br>Olivia M. Urso, Bar No. 57492<br>MULLIKEN WEINER BERG & JOLIVET P.C.<br>Alamo Corporate Center<br>102 South Tejon Street, Suite 900<br>Colorado Springs, CO 80903<br>Phone Number: (719) 635-8750<br>Fax Number: (719) 635-8706<br>E-mail: mweiner@mullikenlaw.com<br>        nricotta@mullikenlaw.com<br>        ourso@mullikenlaw.com | Case No.:<br><br>Division: |
| **COMPLAINT AND JURY DEMAND** | |

Plaintiff, Titan Solutions, LLC ("Titan" or "Company"), by and through its attorneys, Mulliken Weiner Berg & Jolivet P.C., hereby complains and alleges against Defendants B&B Heaters, LLC ("B&B Heaters") and Brian Blakeman, an individual ("Blakeman") as follows:

### Nature of the Case

1. This case arises from Defendants' misappropriation and misuse of Titan's confidential information and trade secrets. Titan provides oilfield services to customers in Colorado and other states. Defendant Blakeman began his career with Titan as an employee responsible for surface equipment rentals. The Company recognized Blakeman as a rising leader. With Titan's support, Blakeman formed a company, B&B Heaters, to rent certain oilfield equipment to Titan for the purpose of complementing Titan's existing business while providing Blakeman with business and managerial experience and a supplemental source of income to his employment with Titan. Having advanced to a senior position within Titan, Blakeman, individually and through B&B Heaters, gained access to Titan's confidential information and trade secrets. After exploiting his position to learn all that he could about Titan's business, Blakeman

1

<span style="color:red">EXHIBIT A</span>

left the employ of Titan, taking Titan's confidential information and trade secrets with him in order to compete directly against Titan. Together with B&B Heaters, Blakeman unlawfully misappropriated Titan's confidential information and trade secrets to Titan's detriment in violation of Titan's employee handbook, agreements between the parties, and applicable law.

2. Plaintiff Titan is a Colorado limited liability company with its principal place of business at 2900 F Street, Greeley, Colorado, 80631.

3. Defendant B&B Heaters is a Wyoming limited liability company with its principal place of business at 211 Sterling Street, Gillette, Wyoming, 82718.

4. On information and belief, Defendant Blakeman is a resident of Gillette, Wyoming. At all times relevant to this action, Blakeman conducted business activities in Colorado on behalf of Titan, including negotiating pricing lists with Colorado vendors, and training and mentoring Titan employees located in Colorado. On information and belief, at all relevant times Blakeman has been the managing member and in control of B&B Heaters.

## Venue

5. Venue is proper in this Court pursuant to C.R.C.P. 98(c).

6. Defendant B&B Heaters is a party to the Master Services Agreement by which each party "submits to the exclusive jurisdiction of the state and federal courts in Denver, Colorado, in respect of any actions or proceedings relating in any way to this agreement." *See* **Exhibit 1**, Master Services Agreement, ¶ 25(i).

## Background

### Titan Establishes a Successful Oilfield Services Business Across Multiple States, Rents Flameless Heaters to Oil and Gas Producers

7. Plaintiff Titan is in the oil and gas business, providing custom oilfield solutions to its customers. Among other things, Titan provides its customers with surface rental equipment, including but not limited to flameless heaters, which safely provide thermal heat without a flame when needed during oilfield operations. Rental equipment comprises a significant portion of Titan's business and revenue.

8. Titan's principal place of business is in Colorado. Titan provides oilfield services to customers in Colorado, New Mexico, North Dakota, Texas, Utah, and Wyoming, where Titan maintains an office in Gillette. Titan's longstanding customers include large independent oil and gas companies that operate in these states.

### Titan Revolutionizes Pricing for Flameless Heater Rentals, Gains Significant Competitive Advantage

9. Titan's confidential pricing structure for the rental of flameless heaters ***revolutionized*** pricing in this business segment. It was unique to the industry and gave Titan a significant competitive advantage. Titan's confidential pricing structure provided Titan's

EXHIBIT A

customers with operational flexibility and an ability to control wellsite costs, which made Titan a preferred service provider with respect to flameless heater rentals.

### Titan Maintains a Comprehensive Employee Handbook

10. Titan is a privately held company, with approximately 85 employees as of year-end 2022. Titan requires new employees to acknowledge receipt of Titan's Employee Handbook (the "Handbook"). Within the Handbook, a section entitled Conduct Practices lays out employee guidelines with regard to Confidentiality, Conflict of Interest/Code of Ethics, and Protecting Company Property.

11. The Handbook's Confidentiality provision specifically states in relevant part:

> "CONFIDENTIALITY. **During the course of your employment you may come into possession of confidential information or trade secrets that belong to the Company and our customers, such as information regarding the development of systems, processes, products, know-how, technology, internal reports, procedures, or other internal business-related communications. You are required to maintain confidentiality of all such information available to you through your duties and responsibilities** here. [***]" (Emphasis added.)

12. The Handbook's Conflict of Interest/Code of Ethics provision specifically states in relevant part:

> "CONFLICT OF INTEREST / CODE OF ETHICS. A company's reputation for integrity is its most valuable asset and is directly related to the conduct of its officers and other employees. **Therefore, employees must never use their positions with the company, or any of its customers, for private financial gain, to advance personal financial interests, to obtain favors or benefits for themselves, members of their families or any other individuals, corporations or business entities, or engage in activities, investments or associations that compete with the company, interferes with an employee's business judgment concerning the company's best interests, or exploits an employee's position with the company for personal gain**. [***]" (Emphasis added.)

13. The Handbook's Protecting Company Property provision specifically states:

> "PROTECTING COMPANY PROPERTY. Protecting our company's information is the responsibility of every employee**. Do not discuss the company's confidential business or proprietary business matters, or share confidential**, personal employee **information** (such as social security numbers, personal banking or medical information) **with anyone who does not work for us such as** friends, family members, members of the media, or **other business entities**. [***]" (Emphasis added.)

14. The Handbook also expressly identifies the following conduct as a violation of the Company's standards of conduct, as part of a lengthier bullet point list which is described in the Handbook as "not all-inclusive":

3

EXHIBIT A

- "[***] **Disclosing or discussing confidential information without expressed permission**";

- "Threats, **misappropriation, release of confidential information, unauthorized use or possession of, or removal of Company** property, **records, documents**, funds or any items which do not belong to the employee regardless of its condition or value [***]"; and

- "**Violation or disregard of any posted or known company practice, policy, or procedure** [***]." (Emphasis added.)

**Blakeman Joins Titan, Finds Success as a Rising Star in the Company**

15. In November of 2018, Defendant Blakeman began working for Titan as a surface equipment rentals supervisor ("Rentals Supervisor") out of Titan's Gillette, Wyoming office. He reported to the district manager.

16. As a requirement of his employment with Titan, Blakeman acknowledged receipt and review of Titan's Handbook, which included without limitation the Handbook provisions relating to Confidentiality, Conflict of Interest/Code of Ethics, and Protecting Company Property.

17. In his role as Rentals Supervisor, unlike other such supervisors, Blakeman was given the responsibility of negotiating and setting rental equipment pricing with Titan's vendors, who supplied the equipment to Titan, and with Titan's customers, who rented the equipment from Titan. To assist him in this role, Titan provided Blakeman with access to Titan's confidential information and trade secrets, including without limitation Titan's customer lists and pricing information, in order to set competitive pricing and attract and retain business on Titan's behalf.

18. Blakeman excelled at his position as Rentals Supervisor. Accordingly, Titan increased Blakeman's responsibilities beyond the scope of his position as Rentals Supervisor. He was given opportunities to manage rental operations for Titan in New Mexico, North Dakota, and Texas. He was also given additional responsibilities related to Titan's business development.

19. In these new management and leadership roles, Blakeman began reporting directly to a Company vice president rather than the district manager. Blakeman's reporting relationship with the vice president and additional job responsibilities provided him with access to Titan's executive strategy meetings and access to Titan's confidential business strategies and objectives. Blakeman had direct access to Titan's executive team. This high-level access, in turn, exposed Blakeman to even more of Titan's confidential information and trade secrets, including without limitation Titan's internally generated market data and other competitive data, compilations, and information.

20. Blakeman was given every significant growth opportunity available to a person in his role. Titan continued to invest in Blakeman, including by sending Blakeman to a one-week executive leadership training program in Colorado in August of 2022 at a cost to the Company of approximately $8,000 (the "Colorado Training Course").

EXHIBIT A

21. In the spring of 2022, there was a mutual understanding between Titan and Blakeman that Blakeman was on a two-year fast track to hold an executive position at Titan (that of vice president). He was a trusted employee and rising star.

**Titan Helps Blakeman Form B&B Heaters, a Limited Liability Company, to Supply Titan with Flameless Heaters to Rent to Titan's Customers**

22. As part of its continued investment in Blakeman's professional development, Titan entered into a business arrangement with Blakeman whereby Blakeman was permitted to purchase flameless heaters through a limited liability company owned and controlled by Blakeman, which he called B&B Heaters. B&B Heaters would then supply the flameless heaters to Titan on commercial terms. Titan would, in turn, rent the heaters to its customers using Titan's unique pricing structure, which gave Titan a competitive advantage in the market.

23. Titan assisted Blakeman with the formation of B&B Heaters and helped Blakeman procure the necessary business arrangements to operate B&B Heaters profitably, including a bank loan to finance the purchase of the equipment by Blakeman and/or B&B Heaters and introductions to insurance representatives. Titan held Blakeman's hand through the entire process of establishing B&B Heaters.

24. This arrangement was for the mutual benefit of Titan and Blakeman. It allowed Blakeman to supplement his income and further develop his managerial and leadership skills, and it allowed Titan to put a program of retention in place for Blakeman while procuring reliable rental equipment for its customers at a competitive price. Accordingly, Titan acknowledged that the arrangement would not be considered a violation of the Company's Handbook.

25. On September 13, 2019, Titan and Blakeman executed both a Master Services Agreement ("MSA") and a Rental Agreement for six flameless heaters ("2019 Rental Agreement") (together "the Agreements"). *See* **Exhibit 1**, MSA; **Exhibit 2**, 2019 Rental Agreement.

26. The Rental Agreement between the parties was subsequently renewed, and an identical Rental Agreement was executed between the parties on August 20, 2021. *See* **Exhibit** 3, 2021 Rental Agreement.

**Titan and Blakeman, through B&B Rentals, Enter into Agreements with Strict Confidentiality and Non-Compete Terms**

27. Under both the MSA and the Rental Agreement, Titan is referred to as the "Contractor" and B&B Heaters as the "Subcontractor."

28. The MSA was formed for the purpose of engaging B&B Heaters as a subcontractor on prime contracts entered into between Titan and its customers. All work performed by B&B Heaters was to be in accordance with the terms and conditions set forth in the MSA. *See* Ex. 1, at ¶ 2.

EXHIBIT A

29. The MSA includes a confidentiality provision, which states:

> "Subcontractor acknowledges and agrees that the drawings, specifications and all copies or contents thereof given to or made available to Subcontractor by Contractor for the limited purpose of use by Subcontractor, its employees, Subcontractors, agents, representatives, consultants, associates and material suppliers may not be used for any other purpose without the prior written consent of Contractor. **Subcontractor further agrees to keep confidential all information, including but not limited to, materials, drawings, designs, photographs, and processes supplied by Contractor, or any knowledge of the same acquired by Subcontractor in the course of preparing for or undertaking any work under this Agreement**. Upon written request of Contractor, Subcontractor and its Subcontractors shall each execute a confidentiality agreement in furtherance of the confidentiality obligations herein."

Ex. 1, at ¶ 18 (emphasis added).

30. The Rental Agreements incorporate the terms and conditions of the MSA. *See* Exs. 2 and 3, each at p. 1.

31. In addition, the Rental Agreements include the following identical non-compete provision:

> "**Subcontractor agrees, that in return for Titans Solutions commitment to rent Subcontractors heaters, to not directly or indirectly (through one or more intermediaries), whether individually, or as an officer, director, employee or consultant, compete, in whole or in part with, or assist any Person in competing in whole or in part with, the business engaged in by the Company in the Restricted Area.** For this purpose, the "Restricted Area" shall mean any State of the United States in which the Company has performed services at any time during a one year period that starts on the Termination Date of rental agreement." *See* Exs. 2 & 3, each at p. 2 (emphasis added).

**Blakeman Leaves Titan, Taking Titan's Confidential Information and Trade Secrets in Order to Compete Directly with Titan in the Oilfield Equipment Rentals Business**

32. For the duration of the MSA and Rental Agreements, Blakeman continued his employment with Titan while operating B&B Heaters for the mutual benefit of Titan and Blakeman.

33. In early 2022, Blakeman approached Titan executives and informed them that Titan's main competitor had offered him a significant amount of money to leave Titan. Blakeman declined the offer and Titan asked its competitor to stop poaching its employees.

34. On August 12, 2022 – the day after Blakeman returned from the Colorado Training Course that he attended at Titan's expense – Blakeman terminated his employment with Titan.

6

EXHIBIT A

Blakeman represented that he wanted to work just six months each year out on his own and spend the rest of the year with his family. At that time, Blakeman did not say that he intended to compete with Titan in Titan's markets, and he did not give Titan any reason to believe that he would be misappropriating Titan's confidential information and trade secrets in competition with Titan or in violation of Blakeman's duties, the Handbook, the Agreements, or applicable law.

35. The same week that Blakeman resigned, Titan was informed that Blakeman and/or B&B Heaters began working for one of Titan's direct competitors in South Dakota, a state where Titan does not operate. The competitor insisted that Blakeman and B&B Heaters had not done anything wrong given that Titan does not operate in South Dakota.

36. Following Blakeman's departure from the Company, Titan learned that Blakeman and/or B&B Heaters had been secretly competing directly with Titan in one or more of Titan's markets during the time that Blakeman was employed by Titan, and during the non-compete period set forth in the Rental Agreements. Among other things, Blakeman and B&B Heaters were using Titan's confidential information and trade secrets to Titan's detriment.

37. At around the same time, Titan was made aware that Blakeman, individually and/or through B&B Heaters, had been renting flameless heaters from Titan's Utah vendor and re-renting the flameless heaters directly to Titan's customers in Wyoming at a discounted price.

38. In so doing, on information and belief, Blakeman misappropriated Titan's confidential information and trade secrets, including Titan's business strategies and objectives, customer list, pricing information (to include Titan's unique pricing structure), internally generated market data, and other competitive data, compilations, and information.

39. Blakeman and B&B Heaters have actively and directly assisted a known competitor so that the competitor may set its pricing in order to stay below Titan's pricing. On information and belief, Blakeman and B&B Heaters benefit financially from this arrangement in the form of higher margins, direct payments, and/or commissions.

40. On information and belief, during his employment with Titan, Blakeman had been actively planning to engage in the same or similar business as Titan within the same markets, and Blakeman intentionally concealed this plan from Titan.

41. Upon learning that Blakeman and B&B Heaters were renting flameless heaters directly to Titan's longstanding customers, Titan directed Blakeman and B&B Heaters to cease and desist the use of Titan's confidential information and trade secrets. Blakeman and B&B Heaters refused to comply.

42. The misappropriation of Titan's confidential information and trade secrets by Blakeman is a violation by Blakeman, as the managing member and controlling mind of B&B Heaters, of the non-compete provision of the Rental Agreements and the confidentiality provision of the MSA, and is also a violation of Blakeman's duties to the Company, Titan's policies as set forth in Titan's Handbook, and applicable law.

43. The misappropriation of Titan's confidential information and trade secrets by B&B Heaters is a violation by B&B Heaters of the non-compete provision of the Rental Agreements,

EXHIBIT A

the confidentiality provision of the MSA, and applicable law. Further, B&B Heaters has aided and abetted Blakeman in the breach of his duties to the Company, Titan's policies as set forth in Titan's Handbook, and applicable law.

44. Blakeman and B&B Heaters use of Titan's confidential information and trade secrets has damaged Titan in an amount to be determined at trial. Among other things, Blakeman and B&B Heaters have, individually, jointly and severally, caused Titan to lose business, caused irreparable damage to Titan's business relationships with its customers, and caused reputational damage to Titan. Further, as a result of the actions of Blakeman and B&B Heaters, Titan has been unable to collect past due amounts owed to Titan while Blakeman managed equipment rentals on Titan's behalf.

45. On February 13, 2023, Titan sent Blakeman and B&B Heaters a formal request to mediate the dispute arising from Blakeman and B&B Heaters' misappropriation of Titan's confidential information and trade secrets.

46. The parties did not resolve this dispute through mediation.

## FIRST CLAIM FOR RELIEF
### (Breach of Duty of Loyalty – Defendant Brian Blakeman)

47. Titan incorporates by reference the averments set forth in paragraphs 1 through 46 above.

48. An employee owes a fiduciary duty to its employer and is bound at all times during employment to exercise the utmost good faith and loyalty in the performance of his duties. *See Jet Courier Serv., Inc. v. Mulei*, 771 P.2d 486, 492 (Colo. 1989).

49. One facet of the duty of loyalty is an agent's duty not to compete with the principal concerning the subject matter of his agency. *Id.* at 492-93.

50. Blakeman maintained high levels of responsibility with Titan as a Rentals Supervisor, manager, and director of business development, and had access to Titan's confidential information and trade secrets by virtue of his employment with Titan.

51. As a high-level employee at Titan, Blakeman owed Titan a duty of loyalty.

52. Blakeman breached his duty of loyalty by:

   a. Forming B&B Heaters for the purpose of actively engaging in the same or similar business as Titan within the same markets, in competition with Titan, a plan which he intentionally concealed from Titan during his employment with the Company;

   b. Utilizing Titan's confidential information and trade secrets to undercut Titan;

   c. Disparaging Titan's business reputation; and

EXHIBIT A

    d.  Soliciting Titan's customers to rent flameless heaters from B&B Heaters instead of Titan, thereby taking substantial business away from Titan.

53.    Blakeman's breaches of his duty of loyalty have damaged Titan in an amount to be proven at trial.

WHEREFORE, Plaintiff Titan Solutions, LLC, requests that this Court enter judgment in its favor on its First Claim for Relief against Blakeman; for damages in an amount to be proven at trial, together with pre-and post-judgment interest as provided by law; for attorney's fees and costs; and, for such other and further relief as this Court deems just and proper.

## SECOND CLAIM FOR RELIEF
### (Violation of C.R.S. § 7-74-101, *et seq.*, Colorado Uniform Trade Secrets Act - Both Defendants)

54.    Titan incorporates by reference the averments set forth in paragraphs 1 through 53 above.

55.    Titan's business strategies and objectives, customer list, pricing information (to include Titan's unique pricing structure), internally generated market data, and other competitive data, compilations, and information are Titan's confidential information and trade secrets, which Titan has spent substantial time and resources in developing in order to gain a competitive advantage in the marketplace.

56.    Titan's confidential information and trade secrets provided Titan with a competitive edge.

57.    Titan took reasonable steps to protect its confidential information and trade secrets, including without limitation by publishing clear policies governing use, requiring the Company's employees to maintain confidentiality, prohibiting conflicts of interest, restricting access, and including confidentiality and non-compete terms in the Company's contracts as appropriate.

58.    Blakeman and B&B Heaters acquired access to Titan's confidential information and trade secrets by virtue of Blakeman's employment with Titan and B&B Heaters' subcontracting work with Titan.

59.    Defendants unlawfully used this information for the commercial benefit of Blakeman, B&B Heaters and third parties, to Titan's detriment.

60.    Defendants had a duty to protect, and not to disclose or use, Titan's confidential information and trade secrets, which was breached when they used the information for the commercial benefit of Blakeman, B&B Heaters and third parties.

61.    Specifically, in addition to the foregoing, Blakeman and B&B Heaters utilized Titan's confidential customer list, pricing information, and unique pricing structure to undercut Titan's pricing, disparage Titan's business reputation, and take Titan's customers away from Titan.

EXHIBIT A

62. At all relevant times, Defendants knew that Titan's confidential information and trade secrets were being misappropriated for an improper use.

63. Defendants' misappropriation of Titan's confidential information and trade secrets was attended by circumstances of willful and wanton conduct and disregard for Titan's rights.

64. Defendants have been unjustly enriched by their unlawful misappropriation of Titan's confidential information and trade secrets.

65. In addition, Defendants' breaches have also caused irreparable harm to Titan, requiring an order permanently enjoining and restraining Defendants from further use or disclosure of Titan's confidential information and trade secrets and causing Defendants to return all documents, whether in electronic or hard copy form, containing any of Titan's confidential information and trade secrets.

66. As a direct and proximate result and consequence of Defendants' willful misappropriation of Titan's trade secrets, Titan has and will continue to sustain actual damages, consequential damages, incidental damages, special damages, lost profits, costs, expenses, and attorney fees, in an amount to be proven at trial.

WHEREFORE, Plaintiff Titan Solutions, LLC, requests that this Court enter judgment in its favor on its Second Claim for Relief against both Defendants, jointly and severally; for damages in an amount to be proven at trial, together with pre-and post-judgment interest as provided by law; for a preliminary and/or permanent injunction restraining Defendants and, as applicable, his, its, and their officers, members, agents, employees, directors and representatives, from continued use of Titan's confidential information and trade secrets pursuant to C.R.S. § 7-74-103; for attorney's fees and costs; and for such other and further relief as this Court deems just and proper.

### THIRD CLAIM FOR RELIEF
**(Breach of Master Services Agreement - Defendant B&B Heaters, LLC)**

67. Titan incorporates by reference the averments set forth in paragraphs 1 through 66 above.

68. As set forth more fully above, B&B Heaters entered into the MSA with Titan, which mandated, in part, that B&B Heaters, as Subcontractor, agree "to keep confidential all information, including but not limited to … processes supplied by Contractor, or any knowledge of the same acquired by B&B Heaters in the course of preparing for or undertaking any work" under the MSA.

69. B&B Heaters breached the confidentiality provision of the MSA when it began utilizing Titan's confidential information and trade secrets, including without limitation Titan's business strategies and objectives, customer list, pricing information (to include Titan's unique pricing structure), internally generated market data, and other competitive data, compilations, and information, in order to undercut Titan's pricing, disparage Titan's business reputation, and take Titan's customers.

70. Titan has performed its obligations under the MSA.

EXHIBIT A

71. As a direct and proximate result and consequence of B&B Heaters' breach of the MSA, Titan has sustained substantial monetary damages, including actual damages, consequential damages, incidental damages, special damages, lost profits, costs, and expenses, in an amount to be proven at trial.

WHEREFORE, Plaintiff Titan Solutions, LLC, requests that this Court enter judgment in its favor on its Third Claim for Relief against B&B Heaters; for damages in an amount to be proven at trial, together with pre- and post-judgment interest as provided by law; for costs; and for such other and further relief as this Court deems just and proper.

**FOURTH CLAIM FOR RELIEF**
**(Violation of Non-Compete Agreement(s) – Defendant B&B Heaters, LLC)**

72. Titan incorporates by reference the averments set forth in paragraphs 1 through 71 above.

73. The 2019 Rental Agreement and the 2021 Rental Agreement entered into between Titan and B&B Heaters were for the purpose of B&B Heaters, as a subcontractor, to assist Titan in its performance of its prime contracts with its oilfield customers.

74. As set forth more fully above, the Rental Agreements contained a non-compete clause in which B&B Heaters, as subcontractor, agreed that in return for Titan committing to rent equipment from B&B Heaters, B&B Heaters would not compete, directly or indirectly, with Titan's business in any state in which Titan had performed services within one-year of the termination of the Rental Agreements.

75. B&B Heaters breached the Non-Compete Agreements by renting flameless heaters directly to Titan's customers in the same states that Titan had furnished services for these customers within one year of the termination of the Rental Agreements.

76. Titan fully performed its obligations under the Rental Agreements.

77. As a direct and proximate result and consequence of B&B Heaters' breach, Titan has sustained substantial monetary damages, including actual damages, consequential damages, incidental damages, special damages, lost profits, costs, and expenses, in an amount to be proven at trial.

WHEREFORE, Plaintiff Titan Solutions, LLC, requests that this Court enter judgment in its favor on its Fourth Claim for Relief against B&B Heaters; for damages in an amount to be proven at trial, together with pre- and post-judgment interest as provided by law; for costs; and for such other and further relief as this Court deems just and proper.

EXHIBIT A

## FIFTH CLAIM FOR RELIEF
### (Breach of Duty of Good Faith and Fair Dealing – Defendant B&B Heaters, LLC)

78. Titan incorporates by reference the averments set forth in paragraphs 1 through 77 above.

79. Pursuant to Colorado law, every contract contains an implied covenant of good faith and fair dealing.

80. B&B Heaters is required to act reasonably, in good faith and fairly with Titan.

81. As set forth above, B&B Heaters has failed to act in good faith and to deal fairly with Titan, in violation of Colorado law, including without limitation by gaining improper access to and misappropriating Titan's business strategies and objectives, customer list, pricing information (to include Titan's unique pricing structure), internally generated market data, and other competitive data, compilations, and information.

82. B&B Heaters' breach of its duty of good faith and fair dealing has damaged Titan in an amount to be proven at trial.

WHEREFORE, Plaintiff Titan Solutions, LLC, requests that this Court enter judgment in its favor on its Fifth Claim for Relief against B&B Heaters; for damages in an amount to be proven at trial, together with pre- and post-judgment interest as provided by law; for costs; and for such other and further relief as this Court deems just and proper.

## SIXTH CLAIM FOR RELIEF
### (Civil Theft, C.R.S. § 18-4-405 – Both Defendants)

83. Titan incorporates by reference the averments set forth in paragraphs 1 through 82 above.

84. Defendants committed civil theft of Titan's confidential information and trade secrets, including without limitation Titan's business strategies and objectives, customer list, pricing information (to include Titan's unique pricing structure), internally generated market data, and other competitive data, compilations, and information.

85. Defendants obtained access to this information for a wrongful purpose or purposes, through Blakeman's employment with Titan and B&B Heaters' contracts with Titan.

86. Defendants have unlawfully exercised control over Titan's confidential information and trade secrets, including its confidential customer pricing information and unique pricing structure, and used this information to undercut Titan's pricing, disparage Titan's business reputation, and take Titan's customers.

87. Defendants acted with the intent to permanently deprive or withhold from Titan, as owner of its confidential information and trade secrets, the control of Titan's confidential information and trade secrets, and further misappropriated Titan's confidential information and trade secrets for the commercial benefit of Blakeman and B&B Heaters.

EXHIBIT A

WHEREFORE, Plaintiff Titan Solutions, LLC, requests that this Court enter judgment in its favor on its Sixth Claim for Relief against both Defendants, jointly and severally; for damages in an amount to be proven at trial, together with pre- and post-judgment interest as provided by law; for three times the amount of actual damages pursuant to C.R.S. § 18-4-405; for attorney's fees and costs; and for such other and further relief as this Court deems just and proper.

## SEVENTH CLAIM FOR RELIEF
### (Conversion – Both Defendants)

88. Titan incorporates by reference the averments set forth in paragraphs 1 through 87 above.

89. Titan is the rightful owner of its confidential information and trade secrets, including without limitation Titan's business strategies and objectives, customer list, pricing information (to include Titan's unique pricing structure), internally generated market data, and other competitive data, compilations, and information.

90. Defendants have unlawfully exercised control over Titan's confidential information and trade secrets.

91. Titan has demanded that Defendants return all of Titan's confidential information and trade secrets and cease and desist from further use or disclosure of Titan's confidential information and trade secrets.

92. Defendants have failed to comply with Titan's demands, including without limitation by using Titan's confidential information and trade secrets to undercut Titan's pricing, disparage Titan's business reputation, and take Titan's customers.

WHEREFORE, Plaintiff Titan Solutions, LLC, requests that this Court enter judgment in its favor on its Seventh Claim for Relief against both Defendants, jointly and severally; for damages in an amount to be proven at trial, together with pre- and post-judgment interest as provided by law; for costs; and for such other and further relief as this Court deems just and proper.

## EIGHTH CLAIM FOR RELIEF
### (Unjust Enrichment – Both Defendants)

93. Titan incorporates by reference the averments set forth in paragraphs 1 through 92 above.

94. At Titan's expense, Titan conferred a benefit on Defendants by granting access to Titan's trade secrets and confidential customer pricing information, which Titan has devoted significant time and resources to develop and maintain, including without limitation Titan's business strategies and objectives, customer list, pricing information (to include Titan's unique pricing structure), internally generated market data, and other competitive data, compilations, and information.

EXHIBIT A

95. Titan reasonably believed the Defendants would abide by the terms of the Handbook, the Agreements, and applicable law in their treatment and handling of Titan's confidential information and trade secrets.

96. Under the circumstances, it is unjust for Defendants to retain the benefit of Titan's confidential information and trade secrets without compensating Titan.

WHEREFORE, Plaintiff Titan Solutions, LLC, requests that this Court enter judgment in its favor on its Eighth Claim for Relief against both Defendants jointly and severally; for damages in an amount to be proven at trial, together with pre- and post-judgment interest as provided by law; for costs; and for such other and further relief as this Court deems just and proper.

### JURY DEMAND

Titan demands a jury on all issues so triable.

Dated this 17th day of February 2023.

Respectfully submitted,

MULLIKEN WEINER BERG & JOLIVET P.C.
*[A duly signed original on file at office of undersigned.]*

By: */s/ Murray I. Weiner*
Murray I. Weiner #14352
Dominic J. Ricotta #19939
Olivia M. Urso #57492

*Attorneys for Titan Solutions, LLC*

Plaintiff's Address:
3580 Southern Drive
Gillette, WY 82718

**EXHIBIT A**